```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | |
|---|---|
| GLASTON CORPORATION, and </br> UNIGLASS ENGINEERING OY, </br> </br> Plaintiffs, </br> </br> v. </br> </br> SALEM FABRICATION TECHNOLOGIES </br> GROUP, INC. d/b/a HHH </br> EQUIPMENT RESOURCES, </br> </br> Defendant. | 1:21-CV-942 |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is a patent infringement lawsuit. Plaintiffs Glaston Corporation ("Glaston") and Uniglass Engineering OY ("Uniglass") allege that Defendant Salem Fabrication Technologies Group, Inc., d/b/a HHH Equipment Resources ("Salem") infringe on two of Plaintiffs' patents directly and by assisting a third-party's infringement. (Doc. 14.) Plaintiffs also contend that Salem's infringement is willful, sufficient to support an award of treble damages. Before the court is Salem's motion to dismiss Plaintiffs' claims of contributory, induced, and willful infringement. (Doc. 15.) The motion is fully briefed and ready for decision. For the reasons set forth below, Salem's motion will be denied.

I.  **BACKGROUND**

Plaintiff's amended complaint makes the following factual allegations, which are accepted as true for the purposes of the

present motion.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

Plaintiff Glaston is a corporation organized under the laws of Finland, with a principal place of business in Helsinki. (Doc. 14 at 2.)  Glaston manufactures and sells machines and provides services to produce specialized glass panels for multiple purposes, including architectural and building construction, windows, and the automotive industry. (Id.)  Plaintiff Uniglass is a wholly-owned subsidiary of Glaston, with a principal place of business in Tampere, Finland. (Doc. 14 at 2.)  Uniglass manufactures glass tempering furnaces and undertakes research and development, testing, after-sales service, and final assembly of glass tempering machinery. (Id.)

Defendant Salem is a company organized under the laws of North Carolina with a principal place of business in Winston-Salem. (Id.)  It also does business as "HHH Equipment Resources." (Id.)[1]

Luoyang North Glass Technology Co. ("Northglass"), a nonparty, is a glass manufacturer in China. (Id. at 2.) Northglass exports glass to more than one-hundred countries, including the United States, and lists HHH Tempering Resources[2] as an authorized agent on its website. (Id. at 5, 11); Docs. 14-8,

---

[1] In 2019, Salem Distributing Company acquired HHH Tempering Resources, rebranded itself as Salem, and merged the acquisition into it. (Id.)

[2] Salem does not dispute that this is the same entity as HHH Equipment Resources.

2

14-9.)

Uniglass is the assignee of two patents: (1) United States Patent No. 8,650,911 (the "'911 Patent") and (2) United States Patent No. 8,479,540 (the "'540 Patent"). (Doc. 14 at 4.) Both are exclusively licensed to Glaston and apply to apparatuses and methods for tempering glass. (Doc. 14 at 4, 6.) The patented machinery ensures uniform heating of glass throughout the tempering process, which improves safety and strength. (Id.) The patents "are directed to apparatuses and methods for tempering glass by heating the glass from above and below using different energy absorption principles." (Doc. 14 at 6.) The '911 Patent focuses on the apparatus for heating the glass (Doc. 14 at 7), while the '540 Patent concerns the method for heating the glass (Doc. 14 at 15).

Plaintiffs assert that Northglass's AU series glass tempering furnaces infringe on their patents. (See Doc. 14.) Plaintiffs further contend that Salem directly infringes on their patents and contributed to and induced Northglass's infringement. (Id.) Finally, Plaintiffs assert that Salem's infringement is willful so as to permit the court to enter statutory trebled damages pursuant to 35 U.S.C. § 284. (Id.)

Salem now moves to dismiss the Plaintiffs' claims for willful infringement as well as contributory and induced infringement. (Doc. 15.)

3

## II. ANALYSIS

### A. Standard of Review

A Rule 12(b)(6) motion to dismiss serves to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When assessing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (citing Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

Rules 12(b)(6) must be harmonized with Federal Rule of Civil Procedure 8(a)(2), which provides only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." These rules protect against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible."

4

Twombly, 550 U.S. at 570 (2007); see Iqbal, 556 U.S. at 678 (2009). However, on a Rule 12(b)(6) motion the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

The Federal Circuit possesses exclusive jurisdiction over appeals in patent cases, and its substantive patent law binds this court. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807 (1988); 28 U.S.C. § 1295(a)(1). However, "a motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law." McZeal v. Spring Nextel Corp., 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). Thus, on the present motion, the court must apply the law of the Fourth Circuit as to the pleading standard and the law of the Federal Circuit as to substantive patent law. See C & F Packing Co., Inc., v. IBP, Inc., 224 F.3d 1296, 1306 (Fed. Cir. 2000).

### B. Willful Infringement

Plaintiffs allege that Salem infringed on one or more claims of the '911 patent and that its violations were willful, entitling them to treble damages. (Doc. 14 at 21.) Salem argues that Plaintiffs failed to adequately state a claim for willful infringement because they have not alleged facts from which to infer either "a specific intent to infringe or [] egregious misconduct." (Doc. 16 at 7); see also 35 U.S.C. § 284. Salem's

5

argument focuses on Plaintiffs' alleged pre-suit notice of the patents. In response, Plaintiffs contend that in order to survive a motion to dismiss they need only allege facts making it plausible that Salem had knowledge of the patent and continued to conduct its activities. (Doc. 18. at 20-21.)

Congress enacted § 284's enhanced damages provision to give trial courts discretion in awarding treble damages in patent infringement cases when the infringing conduct is willful. Halo Electronics, Inc., v. Pulse Electronics, Inc., 579 U.S. 93, 103 (2016); 35 U.S.C. § 284. Halo counsels that there should be no "'precise rule or formula' for awarding damages under § 284." Halo, 579 U.S. at 103. Whether to issue such an award is ultimately a question within the discretion of the district judge. Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc., 946 F.3d 1367, 1378 (Fed. Cir. 2020). If a jury finds infringement and decides that it was willful, the district judge determines whether it was egregious enough to warrant enhanced damages. Id.; Sonos, Inc. v. Google LLC, __ F. Supp. 3d __, No. C 21-07559 WHA, 2022 WL 799367, at *2 (N.D. Cal. 2022). In so doing, the district judge must exercise his discretion "'in light of the considerations' underlying the grant of that discretion." Halo, 579 U.S. at 103 (citing Octane Fitness, LLC v. ICON Health and Fitness, Inc., 572 U.S. 545, 554 (2014) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994))). The "punishment" of enhanced damages "should

6

generally be reserved for egregious cases typified by willful misconduct." Halo, 579 U.S. at 106.

There is a lack of appellate guidance regarding the pleading requirements for willful infringement. Sonos, 2022 WL 799367 at *2 (N.D. Cal. 2022) ("No post-Halo appellate authority addresses any pleading requirements for enhanced damages, or for that matter, willful infringement."). Further, "[d]istrict courts have split on whether a patent owner must adequately plead egregiousness as part of its willful infringement claim." Id. In Sonos, for example, the court held that "once willfulness is adequately pled, the complaint need not go further and specify the further aggravating circumstances warranting enhanced damages." Id.

Halo eschewed any "precise rule or formula for awarding damages under § 284." Id. at 103. However, Salem contends that in the Fourth Circuit a plaintiff must plead "both specific intent and egregiousness." (Doc. 19 at 2 (citing Bushnell Hawthorne, LLC v. Cisco Sys., Inc., No. 1:18-cv-760, 2019 WL 8107921, at *1 (E.D. Va. Feb. 26, 2019)).) Salem argues that the Fourth Circuit demands that a plaintiff "allege facts to support every element of a claim." (Id.) (collecting cases). Under this approach, Salem contends, "Plaintiffs must sufficiently plead both specific intent and egregiousness." (Id.)

To support this contention, Salem cites Bushnell Hawthorne, LLC v. Cisco Systems, Incorporated, No. 1:18-cv-760, 2019 WL

7

8107921, at *1 (E.D. Va. Feb. 26, 2019). In Bushnell, the plaintiff contended that the defendants willfully infringed on the relevant patents. In discussing the pleading standard at the motion to dismiss stage, the court stated that "courts have sensibly concluded, to state a plausible claim of willful infringement, the complaint must also allege facts to demonstrate . . . egregious [behavior]." Id. at *1. However, Bushnell offers as an example of egregious behavior "facts showing that defendant was subjectively aware of the risk that its conduct constituted infringement." Bushnell, 2019 WL 8107921 at *1. Finding that the complaint lacked evidence that the defendant had knowledge of infringement "or that defendant's conduct was otherwise egregious," the court dismissed the allegations of willful infringement. Id. at *2. Instead, it concluded, "the mere knowledge of plaintiff's patents, without more, is insufficient to support [a plaintiff's claim of willful infringement]." Id.

One court in this district has embraced a two-prong inquiry in determining whether there was willful infringement: (1) whether the alleged infringer knew of the patents and (2) whether the alleged infringer possessed a specific intent to infringe the patent at the time of the challenged conduct. The Trustees of Purdue University v. Wolfspeed, Inc., No. 21-CV-840, 2022 WL 3226730 at *6 (M.D.N.C. Aug. 10, 2022) (citing Bayer Healthcare LLC v. Baxalta, Inc., 989 F.3d 964, 987 (Fed. Cir. 2021); Halo

8

Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 105-06(2016)). The court continued that, "willfulness requires both knowledge of the infringed patent and knowledge of infringement." Id. However, "a claim for enhanced damages for willful infringement is not adequately stated when all that is alleged is knowledge of the patent and direct infringement." Purdue University, 2022 WL 3226730 at *6 (citing MasterObjects, Inc., v. Amazon.com, Inc., No. C 20-08103 WHA, 2021 WL 4685306, at *2 (N.D. Cal. Oct. 7, 2021)).

From the above discussion, it is clear that a plaintiff must plead more than the defendant's knowledge of the patent. There must be sufficient facts to support a "plausible inference that the defendant had the specific intent to infringe." Sonos, 2022 WL 799367 at *3.

Here, Plaintiffs argue that they began notifying Salem of alleged infringement of the '540 and '911 patents in November 2020 in over seven weeks of correspondence (Doc. 18 at 5 n.1). In their amended complaint, Plaintiffs allege on information and belief that "Defendant was aware of the '911 patent since at least November 2020, when Plaintiffs first notified HHH of the '911 patent and informed it of Plaintiffs' belief that at least the Northglass AU Series Furnace was covered by one or more of its claims." (Doc. 14 ¶ 35.) Based on these facts, the amended complaint alleges that "[o]n information and belief, Defendant

9

knows or should know that the importation, order for sale, sale and promotion to customers of at least the Northglass AU series glass tempering furnaces constitute infringement of the '911 patent," that "Defendant has no good faith belief that the '911 patent is invalid or not infringed," and that "Defendant deliberately and intentionally continues to import, offer to sell, sell, contribute to and promote the use of infringing Northglass furnaces." (Id. ¶ 36.) In similar fashion, the amended complaint alleges that Plaintiffs' November 2020 correspondence to HHH advised Salem of the '540 patent, notified Salem of Plaintiffs' contention that the Northglass AU series Furnace was covered by one or more of its claims, and that Salem knew or should have known that its conduct was infringing on the patent. (Id. ¶¶ 50-51.) Thus, the amended complaint alleges both actual knowledge of the particular patents at issue and Plaintiffs' assertion of infringement as to one or more of their claims as well as the apparatus claimed to be infringing. These allegations, combined with the amended complaint's detailed assertions of how the Northglass AU furnace allegedly infringes on the '911 and '540 patents, which is some evidence of what Salem knew at the time of Plaintiffs' correspondence, as well as Plaintiffs' allegations that Salem is continuing its conduct after having received the November 2020 correspondence, are sufficient at this early pleading stage to support a plausible inference of willfulness.

10

See, e.g., Textile Computer Sys., Inc. v. Broadway Nat'l Bank, __ F. Supp. 3d __, 2022 WL 3142367, at *6 (W.D. Tex. 2022) (finding pre-suit letters identifying patents, accused products, and possibility of infringement sufficient at pleading stage); Parity Networks, LLC v. Cisco Systems, Inc., Civ. No. 6:19-CV-207, 2019 WL 3940952 (W.D. Tex. 2019) (same); Shire ViroPharma Incorporated v. CSL Behring LLC, Civ. No. 17-414, 2018 WL 326406, at *3 (D. Del. 2018) (holding that a specific showing of egregiousness is not required at the pleading stage); Crypto Research, LLC v. Assa Abloy, Inc., 236 F. Supp. 3d 671 (E.D.N.Y. 2017) (finding that the complaint adequately alleged willful infringement after asserting that defendants committed acts of infringement "with full knowledge of plaintiff's rights in the patents").

Salem's motion to dismiss the willful infringement claim is therefore denied.

### C. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To establish an inducement claim, a plaintiff must show that an alleged inducer (1) knew of the patent, (2) knowingly induced the direct infringing acts, and (3) possessed a specific intent to encourage another's infringement of the patent. Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant

11

part). "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." Id. (citing DSU Med. Corp, 471 F. 3d at 1305-06). Rather, "specific intent and action to induce infringement must be proven." Cleveland Clinic Foundation v. True Health Diagnostics, LLC, 859 F.3d 1352 (Fed. Cir. 2017).

For the first prong, knowledge of the patents, Plaintiffs allege that Salem knew of them because of the November 2020 correspondence. (Doc. 14 at 14.) Salem does not dispute this. (See Doc. 16 at 8.)

For the second prong, Plaintiffs assert that Salem knowingly induced infringing acts through its "[(1)] active marketing and promotion [of at least one furnace], and [(2)] services in the installation, training and customer support associated with the sale of those furnaces." (Doc. 18 at 6-7; see Doc. 14 at 13, 18.) To support these contentions, the complaint attaches copies of Salem's website. (Doc. 14 at 7-9.) As to the assertion of active marketing and promotion, Plaintiffs contend that Salem's active promotion of Northglass's tempering furnaces through its partnership and website show Salem's inducement of infringing conduct. (Doc. 14 at 3-6). Moreover, Plaintiffs contend that Salem's offering of technical services to customers for some of the Northglass furnaces provides additional support to the induced infringement claim. (Doc. 14 at 12, 14, 18.)

12

Salem argues that Plaintiffs fail to adequately plead that it knew that its conduct induced infringement. (Doc. 16 at 12.) It cites People.ai, Inc. v. SetSail Technologies, Inc., Case No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. 2021). (Doc. 16 at 12.) In People.ai, the court dismissed the induced infringement claims for lack of factual support that defendants knew of infringing conduct. People.ai, 2021 WL 2333880 at *6 (finding that the amended complaint provided "only a cursory overview of pre-suit correspondence" and did not allege "that a claim chart or other description of infringement was included with the correspondence"). Salem argues that Plaintiffs' amended complaint contains "bare allegations" and lacks claim charts or other descriptions of correspondence. (Doc. 16 at 13.)

The present case is distinguishable. First, the court has neither found nor has Salem offered case law to suggest that a plaintiff must attach claim charts or specific correspondence at the pleading stage. People.ai does not require that Plaintiffs attach correspondence. Instead, the court offered suggestions as to how the plaintiffs could have met their burden, including offering claim charts. Here, Plaintiffs plead several examples of how Salem could be inducing infringement, as evidenced by the amended complaint's various exhibits supporting Salem's sale and service of the Northglass furnaces. (See generally Doc. 14.) Moreover, Plaintiffs allege that they informed Salem of the

13

infringement in their November correspondence. (Id.) Thus, Plaintiffs have alleged third-party infringement and Plaintiffs' knowledge of it. At the pleading stage, this suffices.

Turning to the third prong, Plaintiffs must show that Salem had the specific intent to induce third-party infringement. Vita-Mix Corp., 581 F.3d at 1328. To survive a motion to dismiss, a complaint alleging induced infringement "must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent]. . . .'" Nalco Company v. Chem-Mod, LLC, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (citing Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)(quoting In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012))). See Smart Wearable Technologies Inc. v. Fitbit, Inc., 274 F. Supp. 3d 371 (W.D. Va. 2017) (finding specific intent in an inducement claim where the defendant took "active steps to encourage customers to use the products in an infringing manner.)

Plaintiff's amended complaint alleges that Salem imported, operated, offered for sale, and sold Northglass furnaces. (Doc. 14 at 13, 18). Moreover, Plaintiffs allege that Salem services the furnaces and provides training on their use. Salem responds that this fails to show a "specific intent to encourage infringement" and that "[m]erely advertising an infringing product online is insufficient to plead the specific intent to encourage

14

infringement." (Id. at 14-15.)

It is true that merely advertising a product that is later found to be infringing is insufficient to show encouraged infringement. But that is not what is alleged here. Plaintiffs' factual allegations support the inference that Salem specifically intended to encourage infringement by a third party. Plaintiffs allege that they informed Salem that its activity and the Northglass furnaces were allegedly infringing on their patents, and that Salem nevertheless continued to provide training on how to use the Northglass furnaces in an infringing manner. (Doc. 14 at 12-14, 18-19.) See M2M Solutions LLC v. Telit Communs. PLC, No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) (finding plaintiff sufficiently pleaded specific intent when it contended defendants provided instructions to their customers on using the products in an infringing manner.)

Salem also argues that general advertising is insufficient to support a claim for induced infringement. It cites Intellectual Ventures I LLC v. Bank of America, N.A., in support of its argument. No. 3:13-cv-358-RJC-DSC, 2014 WL 868713 (W.D. N.C. Mar. 5, 2014). In Intellectual Ventures, the court dismissed a claim of induced infringement when it found that the complaint "was devoid of any factual support for [plaintiffs'] claim for induced infringement." Id. at *2. There, "[p]laintiffs merely argued that Defendants advertised the accused products on its

15

website." Id. Further, the complaint failed to "point to specific components on the website establishing that Defendant knew that its customers used the accused products in an infringing manner." Id. Rather, the plaintiffs "merely argued that Defendants advertised the accused products on its website." Id.

Here, Plaintiffs point to multiple portions of Salem's website and instructional information on how to use the furnaces in ways that infringe the '911 and '540 patents. (See, e.g., Docs 14-4 to 14-12). At the pleading stage, these allegations suffice to withstand a motion to dismiss. Salem's motion to dismiss as to the induced infringement claims will therefore be denied.

### D. Contributory Infringement

Finally, Plaintiffs allege that Salem is liable for infringement under 35 U.S.C. § 271(c), commonly known as "contributory infringement." 35 U.S.C. § 271 (c); Nalco, 883 F.3d at 1356. To plead a claim for contributory infringement, a plaintiff must plausibly allege that (1) the defendant knew of the patents, (2) the defendant knew of the patent infringement, (3) and the accused product is not a staple article or commodity that has a substantial non-infringing use. Bio-Rad Laboratories, Inc. v. International Trade Commission, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (citing Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632 (2015)). Contributory infringement requires "only proof of a defendant's knowledge, not intent, that his activity cause

16

infringement." Lifetime Industries, Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1381 (Fed. Cir. 2017) (citing Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990)).

Here, Plaintiffs allege they notified Salem in November 2020 as to the patents at issue and Plaintiffs' contention that Salem infringed on claims in them. The question is whether Plaintiffs have plausibly alleged that the accused product is not a staple article or commodity that has a substantial non-infringing use.

Plaintiffs contend they have articulated several factual allegations to support the third prong. They allege that the "Northglass AU series furnaces . . . are especially made or adapted for a use that infringes the '509 Patent, and there are no substantial noninfringing uses for those furnaces." (Doc. 14 at 19.) Plaintiffs further allege that the "Northglass AU series furnaces are a material component of at least the methods claimed in the '911 Patent [and] they are made or adapted for a use that infringes the '911 Patent." (Id. at 13.) Finally, they allege that the Northglass AU series furnaces have "no substantial non-infringing uses for those furnaces." (Id.) To support these contentions, the amended complaint and its exhibits detail how Plaintiffs believe the Northglass furnace process infringes on the patents. (See Docs. 14, 14-4, 14-5, and 14-6.)

Salem responds that these allegations are inadequate because they "fail[] to provide sufficient factual allegations that the

17

Northglass AU furnace has . . . no substantial noninfringing use" and fail to allege that the "furnaces are material to practicing the alleged invention." (Doc. 16 at 16.)

At this pleading stage, Plaintiffs have offered sufficient factual support that the Northglass furnaces operate in a similar manner to the apparatuses in the '911 patent using the methods of the '540 patent. (See Doc. 14 at 7-11, 16-17.) Further, they have offered evidence that Salem is aware that the accused products operate in similar ways. (See id.) Finally, Plaintiffs allege that the Northglass furnaces are a material component of the methods claimed within the '540 Patent. See id. It is not the court's role to assess the ultimate strength of this claim at this stage, as long as it meets the relatively low threshold of plausibility, which it does. Thus, Salem's motion to dismiss the contributory infringement claim will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Salem's motion to dismiss (Doc. 15) be denied.

                                        /s/   Thomas D. Schroeder
                                       United States District Judge

November 10, 2022