## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GLASTON CORPORATION and UNIGLASS ENGINEERING OY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:21cv942 |
| SALEM FABRICATION TECHNOLOGIES GROUP, INC., | ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the Court on (i) "Salem's Motion for Discovery Sanctions Pursuant to FRCP 37(b) & 37(c)" (Docket Entry 81) (the "Discovery Sanctions Motion"), (ii) "Plaintiffs' Motion to Compel Discovery" (Docket Entry 112) (the "Motion to Compel"), (iii) the "Unopposed Motion to Seal" (Docket Entry 111) (the "Sanctions' Sealing Motion") filed by Glaston Corporation and Uniglass Engineering Oy (collectively, the "Plaintiffs"), and (iv) "Defendant Salem Fabrication Technologies Group, Inc.'s Unopposed Motion to Seal" (Docket Entry 122) (the "MTC Sealing Motion," and collectively with the Sanctions' Sealing Motion, the "Sealing Motions"). For the reasons that follow, the Court will deny the Discovery Sanctions Motion and the Motion to Compel (collectively, the "Discovery Motions") and will deny as moot the Sealing Motions.

"This is a civil action for [alleged] patent infringement" (Docket Entry 14 (the "Complaint"), ¶ 1) of two United States patents (at times, the "Asserted Patents") related to "[t]hermally tempering glass" (id., ¶ 18; see, e.g., id., ¶¶ 19-21). (See generally Docket Entry 14.)[1] Plaintiffs, Finnish companies involved in the manufacture of glass tempering machinery (see id., ¶¶ 2-4), assert that Salem Fabrication Technologies Group, Inc. (the "Defendant" or "Salem") infringed these patents through its sale, importation, distribution, and servicing of certain "glass tempering furnace[s] manufactured by Luoyang North Glass Technology Co., Ltd. ('Northglass'[ or 'North Glass'])" (id., ¶ 1) (the "Accused Products"). (See generally Docket Entry 14.) Defendant disputes Plaintiffs' allegations and seeks declaratory judgments of non-infringement and invalidity of the patents. (See Docket Entry 24 at 1-24.)[2] On April 18, 2024, the Court (per United States District Judge Thomas D. Schroeder) issued its Claim Construction Order, "adopt[ing] all of Plaintiffs' proposed constructions" (Docket Entry 98 at 1). (See id. at 55-56.) The Court has not yet

---

1 According to the Complaint, "[each] Patent is Assigned to Uniglass" (id., ¶¶ 12, 13) and exclusively licensed to Glaston (see id., ¶ 14).

2 Docket Entry page citations utilize the CM/ECF footer's pagination.

scheduled a trial in this matter. (<u>See</u> Docket Entries dated Dec. 9, 2021, to present.)

As relevant here, on February 23, 2023 (<u>see</u> Docket Entry 28 at 12), Plaintiffs and Defendant submitted the "Parties' Joint Rule 26(f) Report" (<u>id.</u> at 1), in which they "agree[d] that fact discovery ends December 13, 2023, and expert discovery begins and ends based on the date that the Court issues a Claim Construction Order" (<u>id.</u> at 5). The Court (per the undersigned United States Magistrate Judge) promptly adopted that proposal, establishing the fact discovery deadline as December 13, 2023. (<u>See</u> Text Order dated Feb. 24, 2023 (the "Scheduling Order").) In August 2023, Defendant moved to compel discovery, specifically seeking responses to certain interrogatories and production of material responsive to its requests for production of documents by a specific date. (<u>See</u> Docket Entry 35.) The Court scheduled a hearing on that motion, directing the parties to confer beforehand to "attempt again to reach a resolution of all remaining disputed issues." (Text Order dated Sept. 14, 2023.) The parties thereafter resolved their dispute regarding certain of the interrogatories (<u>see</u> Docket Entry 50 at 1-2) and the Court granted the motion to compel as to the remaining matters, ordering Plaintiffs to complete their document

3

production and provide their interrogatory responses by October 2, 2023 (see Minute Entry dated Sept. 25, 2023).[3]

On December 13, 2023, the parties filed a "Stipulation Regarding Depositions" (Docket Entry 56 at 1) that

> waive[s] any objection to the validity of any deposition noticed before December 13, 2023 taking place after that date and instead during the month of January 2024[] based on the dates set forth in the Scheduling Order. The parties expressly agree that any deposition taken pursuant to this Stipulation shall be usable in this action as if the deposition had been taken within the United States on or before December 13, 2023, and that all objections lodged during depositions pursuant to this Stipulation shall be preserved, as though the deposition was taken in the United States on or before December 13, 2023.

(Id. at 2.)

On February 2, 2024, Plaintiffs filed a motion to compel "discovery that has been withheld by Defendant on the basis of the alleged common interest privilege." (Docket Entry 69 at 1; see id. at 2.) Defendant objected to that motion on the grounds that the parties had not properly conferred before its filing and that such conferral could resolve or at least narrow the parties' dispute. (See Docket Entry 121-9 at 2-3.) Plaintiffs accordingly withdrew the motion (see Docket Entry 77 at 1) and, after the parties conferred and reached certain agreements, Defendant produced twenty-two "documents that were previously withheld on the basis of

---

3 The parties subsequently agreed to extend this deadline to October 6, 2023. (See Docket Entry 52 at 1.)

common interest privilege with Northglass" (Docket Entry 121-11 at 2). (See Docket Entry 121-10 at 2; Docket Entry 121-11 at 2-4.)

On February 29, 2024, Defendant filed the Discovery Sanctions Motion (see Docket Entry 81 at 3), seeking "to obtain discovery sanctions against Plaintiffs for failure to obey the orders of this Court and failure to supplement their response to Salem's requests for inspection" (id. at 1). Notwithstanding its explicit request for "discovery sanctions" (id.), the Discovery Sanctions Motion lacks any good-faith conferral certification (see id. at 1-4). Instead, Defendant maintains that "Rule 37 [of the Federal Rules of Civil Procedure (the 'Rules')] does not impose any requirement on the parties to confer prior to the filing of th[e Discovery Sanctions] Motion." (Docket Entry 97 at 18 n.4.) The Discovery Sanctions Motion seeks expense-shifting and "an order sanctioning Plaintiffs as follows" (Docket Entry 81 at 1):

> A. Plaintiffs are precluded from arguing or seeking to admit into evidence that any product Plaintiffs made, sold, offered for sale, or used is covered by any claim of the Asserted Patents;
>
> B. Plaintiffs may not argue or seek to introduce into evidence at trial that Plaintiffs aggressively enforce their patent rights anywhere in the world, and Plaintiffs may not rely upon any evidence of Plaintiffs' patent litigation in the world regarding the Asserted Patents or related patents in support of any part of Plaintiffs' affirmative case-in-chief, including at least Plaintiffs' claims for damages;
>
> C. Plaintiffs are precluded from presenting any arguments regarding the price or profit margins of Plaintiffs' sales in the U.S. and from seeking to admit into evidence

that the Accused Products are priced to be less expensive
than Plaintiffs' practicing products;

D. Plaintiffs are precluded from arguing that any lost
sales of Plaintiffs' practicing products are due
exclusively to sales of the Accused Product; it be taken
as a designated fact for purposes of this action that
every competing furnace identified in Mr. Rantala's
spreadsheet is a commercially acceptable non-infringing
alternative to the Accused Products; and Plaintiffs are
precluded from arguing or seeking to admit as evidence
comparisons or characterizations of the efficiency,
quality, and performance of any practicing product,
including at least the FC 500 and 700 series of furnaces;

E. Plaintiffs are precluded from relying upon any service
agreements between either Plaintiffs or Salem and any
third party for any purpose at trial; and it shall be
taken as a designated fact that all of Plaintiffs'
profits for practicing products are derived from service
agreements for furnaces, rather than sales of furnaces.

(Id. at 1-2.)

Plaintiffs oppose the Discovery Sanctions Motion. (See Docket

Entry 107.) In particular, Plaintiffs argue that

Defendant's motion is based on a litany of imagined
failures to respond to either requests that Defendant
never propounded or which Plaintiffs fully responded to.
Further, most of the documents [the Discovery Sanctions
Motion references] were identified for the first time at
depositions taken after the close of fact discovery, and
Defendant neither followed up with Plaintiffs to seek
their production [as promised (see id. at 10-11)], nor
met and conferred with Plaintiffs before filing the
instant motion.

(Id. at 7.) Plaintiffs also filed the Sanctions Sealing Motion,

seeking an order sealing unredacted versions of certain materials

submitted in connection with briefing arising from Defendant's

Discovery Sanctions Motion. (See Docket Entry 111 at 1-8.)

"Defendant does not oppose th[at] motion." (Id. at 2.)

On April 23, 2024, Plaintiffs filed the instant Motion to Compel, seeking "documents, testimony, and information" that Defendant withheld based on its asserted "common interest privilege with Northglass" (Docket Entry 112 at 2). (See id. at 1-4.) Through the Motion to Compel, "Plaintiffs contend that no common interest privilege exists between Defendant and Northglass and that, even if a privilege did exist, Defendant waived the right to assert it." (Id. at 2.) They therefore seek expense-shifting (see id. at 3) and "an order directing Defendant to do the following" (id. at 2):

> 1) Produce the 5 documents identified in Defendant's February 2024 Privilege Log as being withheld (in whole or in part) pursuant to the common-interest privilege;
>
> 2) To the extent not already produced or otherwise identified on Defendant's 2023 and 2024 Privilege Logs, produce all communications between Defendant and Northglass regarding the Asserted Patents and this suit;
>
> 3) Produce the "indemnification agreements, cooperation agreements, common interest agreements" with Northglass, any other such agreement involving the cooperation of Northglass, and any other documents concerning "any obligation by Northglass to indemnity or hold harmless" Defendant; and
>
> 4) Reopen discovery for the *limited* purpose of obtaining deposition testimony related to documents and information previously withheld pursuant to the alleged common interest privilege between Defendant and Northglass, including complete responses to Topics 4 and 13 listed in Plaintiffs' Rule 30(b)(6) Notice of Deposition to Defendant.

(Id. at 2-3 (emphasis in original).)

7

Defendant opposes the Motion to Compel, contending, inter alia, that "Plaintiffs did not properly meet and confer" before filing their motion (Docket Entry 120 at 7) and that the "Motion to Compel is untimely" (id. at 27). (See id. at 7-31.) Defendant also filed the MTC Sealing Motion, seeking to seal certain unredacted materials filed in connection with briefing arising from the Motion to Compel. (See Docket Entry 122 at 1-10.) "Plaintiffs do not oppose [the requested] sealing." (Id. at 3.)

## DISCUSSION

### I. Discovery Sanctions Motion

As it explicitly acknowledges, Defendant brought the Discovery Sanctions Motion pursuant to Rule 37 "to obtain discovery sanctions against Plaintiffs." (Docket Entry 81 at 1 (emphasis added); see also id. (bearing title "Salem's Motion for Discovery Sanctions Pursuant to [Rules] 37(b) & 37(C)" (emphasis added)).) Under this Court's Local Rules, "[t]he Court will not consider motions . . . relating to discovery unless moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord." M.D.N.C. LR 37.1(a) (emphasis added). The Discovery Sanctions Motion seeks sanctions based on alleged discovery failures. (See Docket Entry 81 at 1; see also, e.g., Docket Entry 97 at 6-28 (detailing alleged discovery failures and contending such failures warrant requested sanctions).) Accordingly, the Discovery Sanctions Motion

8

"relat[es] to discovery," M.D.N.C. LR 37.1(a), triggering Defendant's conferral obligations, see, e.g., Packrite, LLC v. Graphic Packaging Int'l, LLC, No. 1:17cv1019, 2020 WL 7133806, at *2 n.2 (M.D.N.C. Dec. 4, 2020) (discussing Local Rule 37.1(a) conferral obligation for sanctions motion), recommendation adopted, No. 1:17cv1019, 2021 WL 9681472 (M.D.N.C. Jan. 6, 2021); Carolina Coupon Clearing, Inc. v. Cardinal Health Managed Care Servs., LLC, No. 1:16cv412, 2018 WL 11424681, at *1 (M.D.N.C. July 2, 2018) (same).[4]

---

4 Notably, although Plaintiffs' opposition to the Discovery Sanctions Motion argues for denial of the Discovery Sanctions Motions on the grounds that Defendant violated Local Rule 37.1 (see Docket Entry 107 at 8-12), Defendant did not address the actual text of this Court's Local Rules in its reply thereto (see Docket Entry 101 at 19-20 (arguing that "No Meet-and-Confer Is Required" (emphasis omitted))). Instead, Defendant maintained:

> Contrary to Plaintiffs' suggestion, motions for sanctions under Rules 37(b) and 37(c) do not seek discovery — but seek adverse evidentiary inferences. Thus, motions for sanctions are not governed by local meet-and-confer rules concerning *discovery motions*. As stated in Salem's Opening Brief, Motions for Sanctions under Rules 37(b) & (c) do not impose a requirement to meet and confer. Motion at 13 n.4. Indeed, such motions can be made orally, in the moment, during a hearing. *Snead v. Automation Indus., Inc.*, 102 F.R.D. 823, 828-29 (D. Md. 1984).

(Id. at 19 (emphasis in original).)

This argument misses the mark. To begin, the Discovery Sanctions Motion indisputably "relat[es] to discovery," M.D.N.C. LR 37.1(a), bringing it within the ambit of Local Rule 37.1. Further, independent of any obligations Rule 37 imposes, Local Rule 37.1's conferral requirements "have the force of law," Hollingsworth v. Perry, 558 U.S. 183, 191 (2010) (internal quotation marks omitted). In addition, Snead does not support the proposition that litigants

9

Defendant does not dispute that it failed to confer with Plaintiffs before pursuing the Discovery Sanctions Motion. (See Docket Entries 81, 97, 101.) This failure alone warrants denial of the Discovery Sanctions Motion. See M.D.N.C. LR 37.1(a) (mandating that "[t]he Court will not consider motions . . . relating to discovery" absent certification of proper consultation); see also M.D.N.C. LR 83.4(a) (explaining that, if "a party fails to comply with a [L]ocal [R]ule . . ., the Court may impose sanctions against the . . . party" and "may make such orders as are just under the circumstances," including "striking [a filing]").

Moreover, even if the Court overlooked this failure, it would still deny the Discovery Sanctions Motion. Under Rule 37(b), if a party "fails to obey an order to provide or permit discovery," the Court may issue any "just order[,]" including seven enumerated sanctions ranging from "staying further proceedings until the order is obeyed" to entering a default judgment and treating the failure as contempt of court. Fed. R. Civ. P. 37(b)(2). In turn, Rule 37(c) establishes a "general rule excluding evidence that a party seeks to offer but has failed to properly disclose," subject to

_____

may move for sanctions under Rule 37 orally, without prior conferral; rather, <u>Snead</u> instructs that litigants can incur Rule 37(b) sanctions for failing to obey an <u>oral order</u>. <u>See id.</u>, 102 F.R.D. at 828-29 ("While sanctions imposed pursuant to Rule 37(b) must be in response to a failure to comply with a court order, such order may be oral and need not be in writing."). Finally, even if <u>Snead</u> supported Defendant's contention regarding Rule 37 motions, that decision from the District of Maryland does not define the obligations that this Court's Local Rules impose.

"two exceptions . . .: (1) when the failure to disclose is 'substantially justified,' and (2) when the nondisclosure is 'harmless.'" <u>Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 596 (4th Cir. 2003) (brackets omitted). The Court possesses "wide discretion" in imposing these sanctions. <u>Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.</u>, 872 F.2d 88, 92 (4th Cir. 1989) (explaining that Rule 37 "gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders"); <u>see also</u> <u>Southern States</u>, 318 F.3d at 597 (noting district court's "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis"); <u>Hathcock v. Navistar Int'l Transp. Corp.</u>, 53 F.3d 36, 40 (4th Cir. 1995) (observing that "the imposition of sanctions under Rule 37(b) lies within the trial court's discretion").[5] Nevertheless, in the context of more severe sanctions, the "[C]ourt's range of discretion is more narrow because" it must account for a "party's rights to a trial by jury and a fair day in court." <u>Mutual Fed.</u>, 872 F.2d at 92 (internal quotation marks omitted).

---

5 "A decision to sanction a litigant pursuant to [Rule] 37 is one that is not unique to patent law, and [courts handling patent cases] therefore apply regional circuit law to that issue." <u>Transclean Corp. v. Bridgewood Servs., Inc.</u>, 290 F.3d 1364, 1370 (Fed. Cir. 2002) (citation omitted).

Thus, in evaluating whether to impose Rule 37(b)(2) sanctions, the Court should consider "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Southern States, 318 F.3d at 597 (internal quotation marks omitted).  Further, in evaluating

> whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors:  (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Id. (explaining that "[f]our of these factors — surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence — relate mainly to the harmlessness exception, while the remaining factor — explanation for the nondisclosure — relates primarily to the substantial justification exception").  In deciding whether to impose Rule 37(c) sanctions, however, "the district court [i]s not required to tick through each of the Southern States factors." Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (emphasis omitted).

Defendant bases its contention that Plaintiffs failed to properly produce items largely on testimony from depositions conducted in January 2024, after fact discovery closed.  (See,

12

_e.g._, Docket Entry 97 at 6 ("During corporate and personal depositions of key Plaintiff witnesses, which were taken out of time to accommodate the witnesses' schedules, Salem learned that Plaintiffs had withheld from production multiple categories of highly relevant and non-privileged documents in direct violation of this Court's order to produce discovery."); Docket Entry 108, ¶¶ 29-34 (discussing requests and deposition).) Despite agreeing to request such material in writing post-deposition, Defendant failed to do so. (_See, e.g._, Docket Entry 108, ¶¶ 29-34.) Indeed, "Defendant's counsel never sought to meet and confer regarding any of the documents referenced in its brief." (_Id._, ¶ 32.)

Moreover, these depositions occurred three months prior to the issuance of the Claim Construction Order (_see_ Docket Entry 98 at 56) — and thus prior to commencement of the expert discovery period (_see_ Docket Entry 28 at 5) — and, as noted, the trial date remains unset (_see_ Docket Entries dated Dec. 9, 2021, to present). (_See_ Docket Entry 108, ¶ 29; Docket Entry 108-13 at 2.) In addition, the parties have informally continued voluntary exchanges of information after the official close of fact discovery. (_See, e.g._, Docket Entry 56 at 2 (reflecting parties' agreement to take depositions out of time); Docket Entry 102-2 at 2-3 (reflecting defense counsel's agreement to "defer the inspection and deposition" of a third party "until after [Plaintiffs' FC] furnace has been installed," anticipated to occur around "late January

13

202[4[6]] (if not later)"); Docket Entry 121-11 at 2 (reflecting supplemental production by Defendant on February 28, 2024, "[f]urther to the parties' conference on February 16, 2024 and the agreements reached therein").)

Accordingly, the record does not support characterization of the requested sanctions as necessary to cure any prejudice that Defendant may have suffered from any improperly withheld material. See, e.g., Koppers Performance Chems., Inc. v. Travelers Indem. Co., 593 F. Supp. 3d 247, 251-52 (D.S.C. 2022) ("agree[ing] with [the defendant] that the failure [to disclose a declaration] was not justified but ultimately find[ing] the failure harmless [due to] possib[ility of] cure"); see also Southern States, 318 F.3d at 597 (directing consideration of "whether less drastic sanctions would have been effective" (internal quotation marks omitted)).

Additionally, Plaintiffs' counsel avers that certain of the requested material does not qualify as responsive to Defendant's discovery requests. (See Docket Entry 108, ¶¶ 34-38.) And Plaintiffs' arguments regarding relevance, responsiveness, and significance appear facially plausible (see Docket Entry 107),

_____

6 The relevant document contains a scrivener's error as to the year. (See id. (explaining in email sent on November 22, 2023, that, despite subpoena's schedule of December 8, 2023, for "inspection/deposition," subpoenaed company's "furnace has not yet been delivered . . . and will not be operational until late January 2023 [sic] (if not later)[, and, a]s such, [the third party] request[s] that the inspection/deposition currently scheduled for December 8th be postponed").)

14

undercutting any argument that Plaintiffs acted in bad faith or that Defendant suffered notable prejudice. Yet, Defendant seeks "draconian" sanctions, which may well "be[] case determinative," Thompson v. United States Dep't of Hous. & Urb. Dev., 219 F.R.D. 93, 102 (D. Md. 2003). (See, e.g., Docket Entry 81 at 1-2 (requesting that "Plaintiffs [be] precluded from arguing or seeking to admit into evidence that any product Plaintiffs made, sold, offered for sale, or used is covered by any claim of the Asserted Patents" and that "[it] be taken as a designated fact that all of Plaintiffs' profits for practicing products are derived from service agreements for furnaces, rather than sales of furnaces").)

Further, many of Defendant's requested sanctions lack proportionality to the alleged discovery failure. For instance, Defendant maintains that Plaintiffs improperly failed to disclose an employee's "heat transfer coefficient analysis spreadsheet comparing Plaintiffs' FC 500 furnace (an allegedly practicing product) against competitors' furnaces — including the accused Northglass product." (Docket Entry 97 at 25.) To remedy the failure to produce this spreadsheet — which Plaintiffs maintain "is not responsive to Defendant's requests for several reasons" (Docket Entry 107 at 27), including that "heat transfer coefficients are unclaimed and have nothing to do with whether a furnace is infringing or not" (id. at 31) — Defendant

> requests that this Court order that (1) Plaintiffs are
> precluded from arguing that any lost sales of Plaintiffs'

15

> practicing products are due exclusively to sales of the
> Accused Product; (2) it be taken as a designated fact for
> purposes of this action that every competing furnace
> identified in [the] spreadsheet is a commercially
> acceptable non-infringing alternative to the Accused
> Products; and (3) preclude Plaintiffs from arguing or
> seeking to admit as evidence comparisons or
> characterizations of the efficiency, quality, and
> performance of any practicing product, including at least
> the FC 500 and 700 series of furnaces.

(Docket Entry 97 at 26 (footnote omitted).)

Similarly, Defendant faults Plaintiffs — Finnish companies — for producing certain financial information in euros rather than United States dollars. (See id. at 23-25; Docket Entry 101 at 12-16.) According to Defendant, although Plaintiffs did produce some of the requested information in dollars (see, e.g., Docket Entry 101 at 13-15),[7] "Salem has been prejudiced by Plaintiffs' production of profit and cost in Euros — rather than the currency of the transaction" (id. at 16) because, "[n]ow that discovery is closed, Salem cannot confirm the accuracy of Plaintiffs' U.S. sales data or the exchange rates that may have been used to generate it" (Docket Entry 97 at 24-25). Thus, Defendant maintains, "the Court should grant Salem's requested evidentiary sanctions" (Docket Entry 101 at 16 (citing Docket Entry 97 at 25)), namely "that this Court preclude Plaintiffs from presenting any arguments regarding the price or profit margins of Plaintiffs' sales in the U.S. and from

---

7 Notably, Defendant did not acknowledge this fact until its reply memorandum, instead implying in its opening memorandum that Plaintiffs had not provided any information in dollars. (See Docket Entries 97, 101.)

seeking to admit into evidence that the Accused Products are priced to be less expensive than Plaintiffs' practicing products" (Docket Entry 97 at 25).[8]

Under the circumstances, even absent Defendant's failure to comply with Local Rule 37.1(a), the Court would decline to impose the extreme sanctions that the Discovery Sanctions Motion seeks. Put simply, particularly given the questionable nature of many of the purported deficiencies and the likelihood that Defendant could have cured any significant prejudice by addressing these asserted deficiencies with Plaintiffs following the January depositions, the record does not warrant such drastic measures, which "would deprive [Plaintiffs] of the opportunity to [advocate for] themselves in such a significant way, that it could prove fatal to their ability to prove their [claims]," Thompson, 219 F.R.D. at 104.

## II. Motion to Compel

"Generally, a party must file a motion to compel before the close of discovery in order for that motion to be deemed timely."

---

8  For their part, Plaintiffs assert that, prior to filing the Discovery Sanctions Motion, Defendant never challenged the currency associated with their provided sales and profit information, despite "be[ing] aware for over two years that Plaintiffs are Finnish companies that sell products in the U.S." (Docket Entry 107 at 21), and that, in any event, they have produced sales information in dollars. (See id. at 20-24; see also Docket Entry 108, ¶ 33.)  Plaintiffs further maintain that "Defendant's discovery requests never sought documents or information containing 'exchange rates,'" but that "all exchange rate information, if available, is ascertainable from Plaintiffs' produced documents." (Docket Entry 107 at 22.)

17

<u>Lane v. Lucent Techs., Inc.</u>, No. 1:04cv789, 2007 WL 2079879, at *3 (M.D.N.C. July 13, 2007) (collecting cases); <u>see, e.g.</u>, <u>Sager v. Standard Ins. Co.</u>, No. 5:08-cv-628, 2010 WL 2772433, at *1 (E.D.N.C. July 12, 2010) (denying motion to compel as "fatally defective," noting that "[i]t is also significant that the motion appears to be untimely, as it was filed after the close of fact discovery"); <u>In re Sulfuric Acid Antitrust Litig.</u>, 231 F.R.D. 331, 332 (N.D. Ill. 2005) (observing that "motions to compel filed after the close of discovery are almost always deemed untimely"). Nevertheless, the "[C]ourt has discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness." <u>United States ex rel. Becker v. Westinghouse Savannah River Co.</u>, 305 F.3d 284, 290 (4th Cir. 2002) (brackets and internal quotation marks omitted).

Plaintiffs filed their initial motion to compel on February 2, 2024 (<u>see</u> Docket Entry 69 at 2), and the instant Motion to Compel on April 23, 2024 (<u>see</u> Docket Entry 112 at 4), rendering each motion untimely given the close of fact discovery on December 13, 2023 (<u>see</u> Text Order dated Feb. 24, 2023). Defendant maintains that this untimeliness warrants denial of the Motion to Compel. (<u>See</u> Docket Entry 120 at 27.) More specifically, Defendant argues that the "Motion to Compel is untimely" because "[f]act discovery closed December 13, 2023, two months before Plaintiffs filed their original motion" and the Motion to Compel "was filed more than four

18

months after [the] close of fact discovery." (Id.) Defendant
further argues that "even the [M]otion [to Compel] acknowledges
that Plaintiffs knew documents were withheld months before bringing
the [M]otion [to Compel]." (Id. (citing "Motion at 3").)[9] Per
Defendant, the "Motion [to Compel] should thus be denied as
untimely." (Id.)

In response, Plaintiffs do not directly address the
untimeliness of the Motion to Compel due to its post-discovery-
deadline filing; instead, they argue:

> After concealing the existence of a written common
> interest agreement for almost a year, changing positions
> on the basis for a common interest agreement and
> privilege, and producing 22 documents previously withheld
> as privileged only after Plaintiffs moved to compel,
> Defendant's claim that [the] Motion [to Compel] was
> untimely is poorly taken.

> Defendant's designee, Mr. Synon, was made available
> for deposition on January 9, 2024, weeks after the close
> of fact discovery. Plaintiffs took his deposition on
> January 9 and 11, received the transcript from the
> reporting service on January 15, and filed their original
> [m]otion to [c]ompel on February 2 — two and a half weeks
> thereafter. (Dkt. 69).

> After a dozen correspondences and a *third* phone
> conference on this subject on February 16, Defendant
> produced previously withheld documents, identified new

---

9 The cited page does not support Defendant's contention, but
the Motion to Compel does suggest Plaintiffs' awareness of
potentially withheld material "[i]n November 2023" (Docket Entry
112 at 1; see id. at 2), and the third numbered page of Plaintiffs'
memorandum in support of the Motion to Compel does concede this
point (see Docket Entry 126 at 9 ("On December 10, 2023, Defendant
asserted that 'emails with North Glass relating to this lawsuit or
the Patents-in-Suit . . . will be withheld from production.'"
(ellipsis in original))).

documents not previously identified, supplemented its
2023 Log with the 2024 Log on February 28, and produced
another Sales and Distribution Agreement on March 26.
Plaintiffs narrowed the scope of its [sic] original
motion to account for Salem's concessions, new
production, and 2024 Log, and filed the instant Motion
[to Compel] on March [sic] 23, several weeks later.
Neither its [sic] original February 2 motion nor the
instant Motion [to Compel] were untimely, especially
given the actions of Defendant preceding each motion.

(Docket Entry 128 at 16-17 (footnote omitted) (emphasis in
original); see also id. at 16 n.5 ("Salem's causal conduct cannot
be gainsaid. *Checkpoint Sys., Inc. v. United States Int'l Trade
Comm'n*, 54 F.3d 756, 763 n.7 (Fed. Cir. 1995) (noting that
'chutzpah' describes 'the behavior of a person who kills his
parents and pleads for the court's mercy on the ground of being an
orphan').").)

As Plaintiffs argue (see, e.g., Docket Entry 126 at 20-23),
Defendant's initial discovery responses, produced May 17, 2023,
suffered from serious defects, including assertion of impermissible
general and boilerplate objections, provision of answers "subject
to and without waiving" said objections, and failures to "state
whether any responsive materials [was] being withheld on the basis
of [any] objection," Fed. R. Civ. P. 34(b)(2)(C).  (See Docket
Entry 126-2.)  As this Court has previously explained, "[g]eneral
or 'boilerplate' objections to discovery requests are invalid.
Similarly, promising to provide . . . documents 'subject to'
objections . . . is improper." Dillon v. BMO Harris Bank, N.A.,
No. 1:13cv897, 2015 WL 6619972, at *2 (M.D.N.C. Oct. 30, 2015)

20

(citation omitted); see also Brown v. Experian Info. Sols., Inc., No. 3:16cv670, 2017 WL 11632852, at *2 (E.D. Va. Apr. 17, 2017) (explaining that "the practice of providing answers 'subject to' objections is confusing and misleading" and "amounts to no answer at all, for it says, essentially, 'here is some information, but there could be more that you are not getting'" (certain internal quotation marks omitted)).

Nonetheless, on November 22, 2023 (see Docket Entry 126-16 at 50), Defendant explicitly objected to requested discovery "as protected from disclosure by . . . the common interest doctrine" (id. at 8, 18; accord id. at 17). Then, at 5:26 p.m. on December 1, 2023, defense counsel sent an email to Plaintiffs' counsel noting that, at "the conference today," the parties "discussed Salem's position that communications with North[g]lass are protected by attorney-client privilege / attorney work product via the common interest privilege." (Docket Entry 126-9 at 2.) Less than five hours later, with full knowledge of Defendant's expressed position that the common interest privilege protected requested information from disclosure, "Plaintiffs propose[d] to exchange privilege logs on December 15" (Docket Entry 121-15 at 2), i.e., two days after the fact discovery deadline. Five days later, on December 6, 2023, Plaintiffs' counsel responded to defense counsel's email, disputing the existence of a common interest privilege. (See Docket Entry 126-10 at 2-3.) On December 10,

2023, Defendant's counsel responded thereto, reiterating Defendant's position that it would withhold documents on the basis of the common interest privilege and "will log such emails in accordance with the requirements of paragraph 14 of the ESI Order in this litigation." (Docket Entry 126-11 at 2 (citing Docket Entry 44).)[10]

On December 11, 2023, Plaintiffs conducted a Rule 30(b)(6) deposition of Defendant, during which defense counsel "object[ed] and caution[ed] the witness not to disclose the substance of any attorney-client communication or communication with North Glass related to defense." (Docket Entry 121-6 at 4.)  On December 13, 2023, Plaintiffs conducted another Rule 30(b)(6) deposition of Defendant, during which defense counsel again objected on privilege grounds and "instruct[ed] the witness not to answer" questions regarding Northglass and its involvement in or control over the litigation. (Docket Entry 121-8 at 7.)  That same day (the fact discovery deadline), the parties filed a stipulation reflecting their agreement to take certain depositions in January 2024. (See Docket Entry 56 at 1-2.)  On January 9 and 11, 2024, Plaintiffs conducted another Rule 30(b)(6) deposition of Defendant. (See Docket Entry 126-14 at 2-15.)  At the deposition on January 11,

_____

10  Pursuant to this Order, "[d]ocuments dated after December 9, 2021 containing privileged and/or work product material relating to the lawsuit do not need to be logged." (Docket Entry 44, ¶ 14(d).)

2024, defense counsel again repeatedly objected on privilege grounds and "instruct[ed] the witness not to reveal anything that he may have learned from his attorneys or North[g]lass." (Id. at 11.)

Notwithstanding the foregoing, Plaintiffs waited until early February to move to compel material that Defendant withheld on the basis of the common interest doctrine. (See Docket Entry 69 at 1-2.) After Defendant objected to that motion for failure to confer beforehand (see Docket Entry 121-9 at 2-3), Plaintiffs withdrew that motion (see Docket Entry 77 at 1). On February 28, 2024, Defendants produced supplemental material (see Docket Entry 121-11 at 2-4), and, on March 19, 2024, Plaintiffs' counsel sent an email seeking further clarification and information (see Docket Entry 121-12 at 2-5), which Defendant's counsel provided on March 26, 2024 (see id. at 2; see also Docket Entry 128 at 16 (asserting that Defendant "produced another Sales and Distribution Agreement on March 26")). Plaintiffs waited almost another month, however, to file the Motion to Compel. (See Docket Entry 112 at 4.)

Under these circumstances, including particularly the explicit and repeated indications within the fact discovery period that Defendant refused to produce certain material on the basis of the common interest privilege, the Court finds that Plaintiffs have not "offer[ed] an acceptable explanation for the [M]otion[ to Compel]'s tardiness," Becker, 305 F.3d at 290 (brackets and internal

23

quotation marks omitted).  The Court will therefore deny the Motion to Compel as untimely.  <u>See, e.g.</u>, <u>Lane</u>, 2007 WL 2079879, at *4 (denying motion as untimely where "[the p]laintiff filed his motion to compel well after the close of discovery").

### III. Sealing Motions

The parties filed Sealing Motions that seek to seal myriad documents involved in briefing the Discovery Motions.  (<u>See</u> Docket Entries 111, 122.)  "Sealed documents should not be filed unless necessary for determination of the matter before the Court." M.D.N.C. LR 5.4(a)(3); <u>see also</u> <u>id.</u> ("If only non-confidential portions of a document are necessary, only those portions should be filed, immaterial portions should be redacted, and no motion to seal should be filed.").  As reflected in the foregoing discussion, the Court did not need the materials that the parties seek to seal to resolve the Discovery Motions.  Accordingly, the Court will deny the Sealing Motions as moot and will direct the Clerk to strike the materials (Docket Entries 103 to 106-5, 109 to 110-20, 123 to 125-15, 127 to 127-26, 129) that the parties sought to file under seal. <u>See</u> M.D.N.C. LR 5.4(c)(3) ("No motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary."); M.D.N.C. LR 83.4(a) (explaining that, if "a party fails to comply with a [L]ocal [R]ule," the Court "may make such orders as are just under the circumstances," including "striking [a filing]"); <u>see also, e.g.</u>, <u>Hartzman v. Wells</u>

24

<u>Fargo & Co.</u>, No. 1:14cv808, 2015 WL 1268267, at *8 (M.D.N.C. Mar. 19, 2015) ("[T]he Court concludes that [the p]laintiff has failed to show why the Report's filing at this moment does not qualify as unnecessary.  Therefore, the Court will direct the Clerk to strike the unredacted version of the [relevant] Report and will deny [the] Motion to Seal as moot." (citation omitted)).

### IV. Final Matters

The parties all seek expense-shifting for the Discovery Motions.  (<u>See, e.g.</u>, Docket Entry 81 at 1; Docket Entry 112 at 3.) Given the denial of both Discovery Motions and the course of conduct leading to the Discovery Motions, the Court declines to order such expense-shifting.  <u>See, e.g.</u>, Fed. R. Civ. P. 37(a)(5)(B) ("[T]he [C]ourt must not order [expense-shifting] if the motion was substantially justified or other circumstances make an award of expenses unjust.").

### CONCLUSION

The Discovery Sanctions Motion violates Local Rule 37.1(a) (and seeks unwarranted sanctions), and Motion to Compel qualifies as untimely.  In addition, resolution of the Discovery Sanctions Motions moots the Sealing Motions by rendering unnecessary the materials they sought to seal.

**IT IS THEREFORE ORDERED** that the Discovery Sanctions Motion (Docket Entry 81) and the Motion to Compel (Docket Entry 112) are **DENIED.**

25

**IT IS FURTHER ORDERED** that the Sealing Motions (Docket Entries 111, 122) are **DENIED AS MOOT.** The Clerk shall **STRIKE** the associated materials (Docket Entries 103 to 106-5, 109 to 110-20, 123 to 125-15, 127 to 127-26, 129) filed under temporary seal.

This 25th day of June, 2024.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
