IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLASTON CORPORATION & UNIGLASS    )
ENGINEERING OY,                   )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )
                                  )        1:21-CV-942
SALEM FABRICATION TECHNOLOGIES    )
GROUP, INC., d/b/a HHH            )
EQUIPMENT RESOURCES,              )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This case is before the court on the motion of Defendant Salem Fabrication Technologies Group, Inc. ("Salem") to dismiss Plaintiff Glaston Corporation ("Glaston") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 57.) Attendant to that motion are several motions to seal filed by the parties (Docs. 60, 73, 86) and Plaintiffs' motion to strike Salem's reply brief or, in the alternative, to file a surreply on the motion to dismiss (Doc. 90). For the reasons that follow, the court declines to strike Salem's reply, allows Plaintiffs' proposed surreply, and denies Salem's motion to dismiss. The motions to seal will be granted in part and denied in part.

## I.   BACKGROUND

Plaintiffs Glaston and Uniglass Engineering OY ("Uniglass")

commenced this action on December 9, 2021, alleging that Salem is infringing on two patents, United States Patent No. 8,479,540 (the "'540 Patent" (Doc. 14-1)) and United States Patent No. 8,650,911 (the "'911 Patent" (Doc. 14-2)), that describe a method and apparatus for tempering glass (Doc. 1 ¶ 1). The facts of the current complaint[1] are more fully laid out in this court's opinion on Salem's prior motion to dismiss. (Doc. 20.) Relevant to Salem's present motion, the complaint alleges that Uniglass is the wholly-owned subsidiary of Glaston and that both the '540 and the '911 patents are assigned to and held by Uniglass, while Glaston is the exclusive licensee of both patents. (Doc. 14 ¶¶ 4, 12-14).

Salem now challenges the veracity of the allegation that Glaston is the exclusive licensee with rights in the patents at issue sufficient to create standing in this case. (Doc. 57.) Discovery has concluded, and the parties have briefed the question of standing (see Docs. 58, 70, 84), creating a record on which the court can decide the issue. In addition, both parties filed several motions to seal related to briefing on the motion to dismiss (Docs. 60, 73, 86), and Plaintiffs filed a motion to strike Salem's reply brief or, in the alternative, to file a surreply on the motion to dismiss (Doc. 90). Those issues are similarly briefed and ripe for review. (See Docs. 60, 73, 86, 91, 95, 96.)

---

[1] Plaintiffs amended their complaint on January 27, 2022. (Doc. 14.)

## II. ANALYSIS

### A. Motion to Strike Reply or Allow Surreply

As a preliminary matter, Plaintiffs move to strike Salem's reply brief in support of its motion to dismiss. Plaintiffs argue that the reply brief exceeds the scope of the prior briefing by raising an argument of constitutional standing Salem failed to make in its opening brief, which they contend addressed only statutory standing. (Doc. 91 at 2-3.) Plaintiffs move to strike any new arguments contained in and exhibits attached to Salem's reply brief or, in the alternative, to allow Plaintiffs leave to file a surreply to address them. (Doc. 90.) Salem responds that its reply brief merely clarifies how its constitutional standing arguments should be interpreted, and it incorporates new exhibits and evidence only to the extent necessary to rebut arguments raised by Plaintiffs in their response. (Doc. 95 at 4-10.)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Because Salem's reply brief does not constitute a pleading, the motion to strike is improper and will be denied. Plaintiffs' motion to strike will nevertheless be construed as a request not to consider the reply.

As Plaintiffs point out, Local Rule 7.3(h) provides that "[a] reply brief is limited to discussion of matters newly raised in

3

the response." L.R. 7.3(h); see <u>Henry v. N.C. Acupuncture Licensing Board</u>, No. 1:15CV831, 2017 WL 401234, at *4 (M.D.N.C. Jan. 30, 2017). Courts in this district "have consistently held that '[r]eply briefs . . . may not inject new grounds . . . [and that an] argument [that] was not contained in the main brief . . . is not before the Court.'" <u>Tyndall v. Maynor</u>, 288 F.R.D. 103, 108 (M.D.N.C. 2013) (quoting <u>Triad Int'l Maintenance Corp. v. Aim Aviation, Inc.</u>, 473 F. Supp. 2d 666, 670 n.1 (M.D.N.C. 2006)). It is improper, under Local Rule 7.3(h), to wait until a reply brief to raise new contentions not made in a party's first motion. <u>See</u> <u>Jarvis v. Stewart</u>, No. 1:04CV00642, 2005 WL 3088589, at *1 (M.D.N.C. Nov. 17, 2005).

However, Salem correctly characterizes its reply brief as within the scope of both its original brief and Plaintiffs' response. Salem's essential theory of dismissal in its original brief is that this court lacks <u>subject matter jurisdiction</u> because Plaintiffs failed to establish that Glaston suffers a recognized injury in fact – i.e., has constitutional standing - under Article III. (<u>See</u> Doc. 58 at 11-14.) In response, Plaintiffs argue that Salem confuses constitutional standing with the requirements of the statute (35 U.S.C. § 281, sometimes called "statutory standing") for patent infringement cases (Doc. 70 at 13-16), that Glaston has standing by virtue of Uniglass's standing (<u>id.</u> at 16-20), that Glaston independently meets the requirements of Article

4

III standing in its own right (id. at 20-26), and that Uniglass and Glaston have at all times acted as a single united party (id. at 26-27). Salem's reply is then tailored to providing counterarguments on these points. (See, e.g., Doc. 84 at 7-14 (disputing with argument and evidence Plaintiffs' argument that Glaston has suffered injury in fact); id. at 14-15 (recontextualizing the argument that statutory standing and constitutional standing are distinct under Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., 925 F.3d 1225, 1234 (Fed. Cir. 2019)); id. at 16 (arguing that Uniglass's standing does not cure Glaston's lack of standing).) Although Plaintiffs portray these arguments and exhibits as new material improperly brought for the first time on reply, the reply does not exceed the scope of prior briefing, and it will be allowed.

However, the court will also grant Plaintiffs' unopposed request for leave to file the proposed surreply. Although disfavored, surreplies are allowed "when fairness dictates based on new arguments raised in the previous reply." DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010). To be sure, Local Rule 7.3(h) "exists to give the replying party a chance to rebut newly raised arguments, not to give the replying party an unfair advantage in having a chance to make new arguments that should have been raised initially." Pouncey v. Guilford Cnty., No. 1:18CV1022, 2020 WL 1274264, at *5 (M.D.N.C. Mar. 17, 2020). In

5

order to avoid any possible unfairness to Plaintiffs, and because Salem does not oppose the filing of Plaintiffs' surreply, the court will allow the surreply (Doc. 90-1) and considers it for purposes of Salem's motion to dismiss.

###### B. Motion to Dismiss for Lack of Jurisdiction

Federal district courts are limited in their exercise of judicial power. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Here, Salem challenges Glaston's standing to remain in the case as part of this court's subject matter jurisdiction, which is addressed at this stage under Federal Rule of Civil Procedure 12(b)(1). CGM, LLC v. BellSouth 14 Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011); see also Pitt Cnty. v. Hotels.com, L.P., 553 F.3d 308, 311 (4th Cir. 2009) (noting district court's re-characterization of defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)).

When resolving a motion pursuant to Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). Where a defendant has not provided

6

evidence to dispute the veracity of the jurisdictional allegations in the complaint, the court accepts facts alleged as true just as it would under Rule 12(b)(6). Kerns v. United States, 585 F.3d 187, 192-93 (4th Cir. 2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). However, where, as here, a defendant challenges "the veracity of facts underpinning subject matter jurisdiction," the challenge to jurisdiction is a factual one, and "the presumption of truthfulness normally accorded a complaint's allegations does not apply." Id. at 192. Instead, the court must consider all of the facts developed on the record and cited by the parties, id., but ultimately, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." U.S. ex rel Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). Where subject matter jurisdiction turns on contested facts, the trial judge may resolve the dispute unless the issue turns on an essential element of a claim, in which case the jury is the proper trier of fact. Id. at 348.

Salem argues that Glaston does not possess the kind of exclusionary property rights in the asserted patents necessary for it to have Article III standing. (Doc. 58 at 15.) According to Salem, by Glaston's own admissions in the complaint and to the Patent and Trademark Office ("PTO"), Uniglass retains all property rights in the two asserted patents. (Id. (citing Docs. 14 ¶ 12-13, 59-4, 59-5 at 9).) Moreover, Salem argues that Glaston cannot

7

have rights in the patent, and therefore standing, merely by virtue of its ownership of Uniglass. (Id. at 15-18.) Citing to the discovery record and Glaston's interrogatory responses, Salem notes that Glaston produced no document ever showing that it is the exclusive licensee of the '540 and '911 patents; instead, Salem points out, Glaston's theory is that "[b]y virtue of Glaston's acquisition of 100% of Uniglass' shares, Uniglass is a wholly-owned subsidiary of Glaston, and Glaston has exclusive rights to all of Uniglass's IP assets including the Asserted patents." (Id. at 10 (citing Doc. 59-1 at 4-5).) Salem contends that case law from the Federal Circuit and various district courts forecloses the theory that Glaston's ownership interests suffice to create exclusive rights in the patents, so in the absence of any other evidence of an express or implied promise to grant exclusive rights in the patent to Glaston, Glaston lacks standing to proceed. (Id. at 16-18 (citing Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1318 (Fed. Cir. 2010), abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93 (2016); Alarm.com, Inc. v. SecureNet Techs. LLC, 345 F. Supp. 3d 544, 550-51 (D. Del. 2018); Bioverativ Inc. v. CSL Behring LLC, No. 17-914-RGA, 2021 WL 3471688, at *4 (D. Del. Aug. 6, 2021); Lans v. Gateway 2000, Inc., 84 F. Supp. 2d 112, 123 n.10 (D.D.C. 1999), aff'd sub nom. Lans v. Digit. Equip. Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001)).) Finally, Salem argues that Glaston cannot

8

cure its lack of standing by obtaining exclusive property rights in the patent at this point, as standing must exist "at the inception of the lawsuit" and cannot later be established by a subsequent changes in status. (Id. at 18-19 (citing Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 975-76 (Fed. Cir. 2005)).)[2]

Plaintiffs advance several arguments in response to Salem's motion. First, on a procedural level, Plaintiffs argue that Salem's motion raises a matter of statutory rather than constitutional standing in the wake of Lone Star, which must be addressed as a motion to dismiss for failure to state a claim under Rule 12(b)(6). (Doc. 70 at 13-16.) As the time for motions pursuant to Rule 12(b)(6) has passed, Plaintiffs argue, Salem's motion is improper and should be denied. (Id.) Second, Plaintiffs argue that where Uniglass's standing has been firmly established, Glaston's standing need not be questioned, as only one plaintiff requires standing for the Plaintiffs to proceed. (Id. at 16-20.) Third, Plaintiffs argue that Glaston has established Article III

---

[2] Salem also seeks dismissal of Glaston's claims with prejudice on the ground that Glaston engaged in "highly questionable conduct" by "misrepresent[ing] the nature of its property rights" in the complaint and in discovery. (Doc. 58 at 19.) Salem further seeks attorneys' fees for defending against the claims Plaintiff brought against it, asserting that Salem was required to conduct discovery of Glaston's damages claims when, Salem asserts, Glaston lacks standing. (Id. at 19-21.) Because the complaint merely alleges that Glaston is the "exclusive licensee" of the patents (Doc. 14 ¶ 14) and the court finds that Glaston has standing, it need not address these arguments further.

9

standing.  (Id. at 20-26.)  Citing numerous facts in the record, Plaintiffs contend that Glaston has the exclusive right to make, use, and sell products and services under the patents, and it has the exclusive right to control enforcement of them.  (Id. at 20-25.)  In other words, Plaintiffs contend, Glaston has rights as an exclusive licensee that were sufficiently violated by Salem's alleged infringement to establish an injury in fact.  (Id.)  Moreover, Plaintiffs argue that Glaston's injury is fairly traceable to Salem's alleged conduct, and they maintain that this injury is likely to be redressed by a favorable judicial decision.  (Id. at 25-26.)  Finally, Plaintiffs note that at all times throughout this litigation, Glaston and Uniglass have acted as a single Plaintiff providing identical testimony and evidence in the case.[3]

In its reply brief, Salem responds to the contention that it improperly focused on statutory standing and challenges Glaston's constitutional standing.  Maintaining that Lone Star did not eliminate the requirement that a Plaintiff be the patent holder or exclusive licensee for the purposes of Article III (Doc. 84 at 14-15), Salem argues that Glaston has not suffered an injury in fact because the record does not establish that it is an exclusive

---

[3] Plaintiffs also respond to Salem's arguments seeking dismissal with prejudice and attorneys' fees, denying that any "highly questionable conduct" took place during discovery and arguing that fee shifting is inappropriate.  (Doc. 70 at 27-30.)  For the reasons set out in note 2, supra, the court need not address those arguments.

Case 1:21-cv-00942-TDS-LPA   Document 137   Filed 08/09/24   Page 10 of 32

licensee, either expressly or impliedly or by virtual assignment, particularly because organizations other than Glaston practice the patent (id. at 8-14). As part of this argument, Salem contends that Glaston is not even properly named as a party in this case, as only a company named "Glaston Oyj Abp" could be identified in the documents produced in discovery. (Id. at 9-12). In addition, Salem argues, Uniglass's standing does not by itself establish Glaston's standing, United States law rather than Finnish law controls the standing inquiry, and purported evidence produced after the close of discovery fails to establish standing. (Id. at 16-19.)

In their surreply, Plaintiffs provide context for the allegations and evidence cited by Salem that different corporations are practicing the patents. (Doc. 90-1.) They note that Glaston's corporate documents reference how Glaston Oyj Abp is simply the Finnish equivalent name for Plaintiff Glaston Corporation, that the businesses cited as practicing the patents are either wholly-owned subsidiaries belonging to the Glaston Corporation Group or otherwise not practicing the two patents at issue, and that the evidence in context fully supports the conclusion that Glaston enjoys the exclusive rights to make, use, and enforce the patents. (Id. at 5-8.)

To begin, the court addresses the parties' dispute over the proper inquiry for assessing constitutional standing in the

11

context of a patent case. As with any federal case, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf'" for a claim to be justiciable. White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). This is "an integral component of the case or controversy requirement." CGM, 664 F.3d at 52 (citation and internal quotation marks omitted). The party seeking to invoke federal court jurisdiction bears the burden of satisfying this Article III standing requirement. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). To meet that burden, a plaintiff must demonstrate (1) that it has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

In patent infringement cases, while the Supreme Court was historically restrictive as to transferees of patents who claimed to have suffered an injury in fact to assert a federal patent infringement claim, see Gayler v. Wilder, 51 U.S. 477 (1851) (holding that assignee of patent rights can sue for infringement); Waterman v. MacKenzie, 138 U.S. 252 (1891) (holding that licensee

12

has no right in own name to sue third parties for infringement), the Court over time both clarified and modified those restrictions. Pertinent here, the Court has recognized the right of exclusive licensees to assert rights in the patent in an infringement case, at least as long as the licensees appeared with the patent holder. Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459 (1926), reh'g denied, 270 U.S. 84 (1926). After the Court separated statutory standing from constitutional standing in Lexmark International, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014), the Federal Circuit acknowledged the inquiry for Patent Act statutory standing as distinct from that for constitutional injury in fact. Intell. Tech LLC v. Zebra Techs. Corp., 101 F.4th 807, 814 (Fed. Cir. 2024) (citing Lone Star, 925 F.3d at 1234-35). Whether a plaintiff has a cause of action raises "a matter of statutory interpretation," whereas constitutional standing inquires whether a plaintiff alleges a "case or controversy" within the meaning of Article III. Lexmark, 572 U.S. at 126.

As a result, Plaintiffs are correct that whether Glaston's interest in the '540 and '911 Patents is sufficient to meet the "patentee" requirement of 35 U.S.C. § 281 is not properly before the court, both because it raises an issue of statutory standing under the Patent Act and because the time for a Rule 12(b)(6) motion has passed. CGM, LLC v. BellSouth Telecommc'ns, Inc., 664

13

F.3d 46, 51-52 (4th Cir. 2011) (distinguishing statutory standing as distinct from Article III standing).  However, the parties have cited no Federal Circuit case that has determined that an infringement plaintiff may possess less than an exclusionary right and still suffer constitutional injury in fact.[4]  In Intellectual Tech LLC, which was decided after Lone Star, for example, the Federal Circuit still looked to and treated the party's possession of "an exclusionary right" as sufficient to confer constitutional standing.  101 F.4th at 814 (emphasis in original); cf. Vericool World LLC v. TemperPack Techs., Inc., No. 1:23CV1761, 2024 WL 3594709, at *3 (E.D. Va. July 2, 2024) (stating that cases conflating statutory and constitutional standing are "no longer good law" but suggesting that "a party can suffer financial harm from a patent infringer even if that party holds no exclusionary rights in the patent itself").

Here, then, because Plaintiffs assert that Uniglass holds the patents as assignee (Doc. 14 ¶¶ 12, 13), Plaintiffs may establish standing by showing by a preponderance of the evidence that Glaston possesses some exclusionary right — e.g., is an exclusive licensee — under the two patents vis-à-vis Salem to establish Glaston's constitutional standing.  Intellectual Tech LLC, 101

---

[4] Lone Star found constitutional standing even though the plaintiff's exclusionary rights fell short of "all substantial rights" in the patent. Lone Star, 925 F.3d. at 1234-35.

14

F.4th at 814. Plaintiffs have done so here. While Salem notes there is no evidence of a written exclusive license, there is no such requirement for the purposes of standing. Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 288 F. App'x 697, 705–06 (Fed. Cir. 2008) (finding corporate ownership, operation as exclusive licensee, and testimony that oral and implied license agreements existed sufficient to create fact issue); see Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358, 1364 (Fed. Cir. 2003) (recognizing the validity of parties' argument that there was an alleged exclusive license); Rite–Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc) ("To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well.") (emphasis added); Weinar v. Rollform, Inc., 744 F.2d 797, 806–07 (Fed. Cir. 1984) (refuting the argument that exclusive licensing rights need to be recorded as provided for in 35 U.S.C. § 261 to be established). Only assignments need be in writing. 35 U.S.C. § 261. Instead, an exclusive license may be established by evidence of an oral or even an implied exclusive licensing agreement. Aspex Eyewear, 288 F. App'x at 705–06.[5] Where the

_____

[5] While Plaintiffs argue that Finnish law controls the question of

15

assignee of a patent brings an infringement action, it is permissible the holder of an oral or implied exclusive license to join it in the litigation. <u>Waymark</u>, 334 F.3d at 1364.

On the present record, Glaston has demonstrated sufficient evidence to support a finding of an implied exclusive licensing agreement between it and Uniglass for the '540 and '911 Patents. The record shows that Glaston has been granted the exclusive right to make, use, and sell products under the asserted patents in the United States. (Doc. 70-2 ¶¶ 4, 7, 10; Doc. 70-3 ¶¶ 8-9, 11, 14.) Glaston also enjoys the exclusive right to control enforcement of the asserted patents. (Doc. 70-2 ¶¶ 4, 7, 10; Doc. 70-3 ¶ 14.) Glaston's patent manager manages the entire patent portfolio related to the business, including the two patents held by Uniglass here, and Glaston, not Uniglass, has paid all maintenance fees on the asserted patents. (Doc. 70-2 ¶¶ 7, 9.) To the extent any royalties are ever paid on the licensing of Uniglass patents, including the two patents asserted in this case, those payments are paid to Glaston. (<u>Id.</u> ¶ 8.) Moreover, Uniglass does not supervise Glaston and cannot prevent Glaston from exercising its rights to fully and exclusively exploit these patents, including their enforcement, licensing, or sale, and Uniglass cannot

_____

licensing and allows for the licensing agreement to be implied rather than in writing (Doc. 72 at 22-23), that argument is immaterial. The same is true under federal law in the United States, so the court need not decide which body of law controls on this issue.

16

initiate any action with respect to the '540 and '911 Patents, including licensing, unless directed to do so by Glaston. (Id. ¶ 10.) Although Salem cites to the testimony of Jukka Vehmas, the inventor of the two patents (who assigned all patent rights to Uniglass) and an employee of Glaston, as refuting the existence of any exclusive licensing agreement for the two patents at issue (Doc. 58 at 10-11), when Vehmas was asked who at Uniglass was responsible for managing Uniglass's patent portfolio, he responded "Glaston." (Doc. 70-4 at 4-5; Doc. 70-5 at 2.) Uniglass's chairman of the board, Sasu Koivumaki, confirmed this. (Doc. 70-2 at 3 (confirming that a written license for the patents was deemed unnecessary because Glaston directs "[a]ll decisions with respect to Uniglass" and thus "Glaston has full and exclusive control over Uniglass and its assets, including its patents".) Testimony is likewise consistent that no other party has the right to make, use, and sell products under the asserted patents, or to enjoy the enforcement rights. (Doc. 70-4 at 3-5.) Therefore, Glaston has demonstrated sufficient evidence to support a finding that it possesses an implied exclusive license from Uniglass as to both patents.

Salem's arguments to the contrary are unavailing. Initially, the fact that the complaint names "Glaston Corporation" instead of "Glaston Oyj Abp" is not fatal, as Glaston Corporation is merely the English translation of Glaston Oyj Abp. Glaston's publicly

17

available Articles of Association explicitly state as much, and this document supports the conclusion that Glaston Corporation is properly named in this case. See Articles of Association of Glaston Corporation, https://glaston.net/wp-content/uploads/2023/05/Glaston-Corporation-Articles-of-Association-15-05-2023.pdf (last accessed Aug. 5, 2024) ("The company's business name is Glaston Oyj Abp; in English, Glaston Corporation. The company is domiciled in Helsinki, Finland.").

Moreover, Salem's argument that any theory of rights Glaston has are premised on its parent-subsidiary relationship with Uniglass is unnecessarily restrictive. It is true that total corporate ownership of the patent holder alone is insufficient to confer standing. See Spine Solutions, 620 F.3d at 1317-18. Additional facts, however, may elevate the relationship beyond mere ownership. For example, in Alarm.com, Inc. v. SecureNet Technologies LLC, 345 F. Supp. 3d 544 (D. Del. 2018), the district court found standing based on an implied exclusive licensing theory. There, the disputed plaintiff corporation wholly owned the plaintiff corporation that held the patent at issue, the two companies shared the same president, the businesses had no operations separate and distinct from one another, and the parent corporation was actually responsible for the practice of the patent. Id. at 550-552. Similar additional facts are present here. In addition to the record evidence already recited, there

18

is evidence that Uniglass is the equivalent "shell" corporation to the subsidiary corporation in Alarm.com. Uniglass has no employees, no capital assets, no documents, and no business activities separate from Glaston. (Doc. 70-2 ¶ 5.) Uniglass exists as an internal Glaston holding company for certain patents originally assigned to it, including the patents at issue here. (Id.) All decisions made with respect to Uniglass are at the discretion and direction of Glaston acting through its leadership team (id. ¶¶ 5-6; Doc. 70-3 ¶ 10). Therefore, Plaintiffs' theory of exclusive licensing is based on more than mere corporate ownership, and there are multiple facts sufficient to support the existence of an implied license.

Salem's argument that other entities are manufacturing and selling the patents is similarly insufficient at this stage to defeat Glaston's constitutional standing. Salem argues that Glaston Finland Oy produces furnaces pursuant to the patents and Glaston America, Inc. sells them, defeating any argument that Glaston Corporation is an exclusive licensee. (Doc. 84 at 10-11.) However, exclusive licensing does not require that others not be allowed to practice the patents; rather, it requires that the exclusive licensee have the power to control which other entities engage in that business within their exclusionary domain. See, e.g., Novartis AG v. Actavis, Inc., 243 F. Supp. 3d 534, 540-44 (D. Del. 2017); WiAV Sols. LLC v. Motorola, Inc., 631 F.3d 1257,

1266-67 (Fed. Cir. 2010) ("[A]n exclusive licensee does not lack constitutional standing to assert its rights under the licensed patent merely because its license is subject not only to rights in existence at the time of the license but also to future licenses that may be granted only to parties other than the accused."); Lone Star, 925 F.3d at 1234-35; see also 8 Donald S. Chisum, Chisum on Patents § 21.03 ("This theory should govern who constitutes an exclusive licensee for standing purposes. The issue should be whether the patent owner is precluded after the date of the instrument from granting further licenses within the stated area given to the licensee.") (footnote omitted).

Here, there is evidence that Glaston is the entity with this control.  (See, e.g., Doc. 70-2 ¶ 10 (indicating that Glaston has effective complete control over Uniglass's decision-making such that Glaston maintains an exclusive license to the patents).)  The fact that the corporations Salem contends are practicing the patents (Glaston America and Glaston Finland) are subsidiaries and part of the Glaston group of companies is consistent with the conclusion that Glaston is an exclusive licensee, as these other companies may merely work at Glaston's direction.  Cf. WiAV Sols., 631 F.3d at 1266-67 (finding that establishing standing does not require a plaintiff to show "that it has the right to exclude all others from practicing the patent" but merely "that it has the right under the patents to exclude the Defendants from engaging in

20

the alleged infringing activity and therefore is injured by the Defendants' conduct" (emphasis in original)).

Therefore, Plaintiffs have adduced sufficient evidence to support the conclusion that Glaston enjoys exclusionary rights in the '540 and '911 Patents, which is sufficient to withstand Salem's challenge Glaston's constitutional standing to sue at this stage. Having reached this conclusion, the court need not address Glaston's alternative arguments. Salem's motion to dismiss for lack of subject matter jurisdiction will therefore be denied.

**C. Motions to Seal**

Both parties have moved to seal certain documents and information pertaining to Salem's motion to dismiss and related briefing. (See Docs. 60, 73, 86.) In particular, Salem seeks to seal the following:

- A description of a portion of the deposition transcript of Jukka Vehmas (December 8, 2023) (appearing in Doc. 58 and under provisional seal in Doc. 61); and

- An excerpt from the deposition transcript of Jukka Vehmas (December 8, 2023) (appearing in Doc. 59-3 and under provisional seal in Doc. 62-3).

(See Doc. 60.) Plaintiffs filed a response brief in support of Salem's request to seal. (Doc. 64.) Plaintiffs also seek to seal the following:

21

- A description of the testimony in portions of the February 1, 2024 declaration of Sasu Koivumäki (appearing in Doc. 70 and under provisional seal in Doc. 72);

- An excerpt from the February 1, 2024 declaration of Sasu Koivumäki (appearing in Doc. 70-2 and under provisional seal in Doc. 72-2);

- A description of portions of the February 2, 2024 declaration of Henri Kaikkonen (appearing in Doc. 70 and under provisional seal in Doc. 72);

- An excerpt from the February 2, 2024 declaration of Henri Kaikkonen (appearing in Doc. 70-3 and under provisional seal in Doc. 72-3);

- A description of portions of the December 8, 2023 deposition transcript of Jukka Vehmas (appearing in Doc. 70 and under provisional seal in Doc. 72);

- An excerpt from the December 8, 2023 deposition transcript of Jukka Vehmas (appearing in Doc. 70-4 and under provisional seal in Doc. 72-4); and

- A description of the indemnification arrangement of a party in this case (appearing in Doc. 70 and under provisional seal in Doc. 72).

(See Doc. 73.) Salem, too, filed a response brief supporting this

22

motion to seal.  (Doc. 78.)[6]  Finally, the parties jointly seek to seal the following information pursuant to a consent motion filed by Salem:

- Information describing the identity and contact information of Glaston Finland OY and Glaston America, Inc.'s customers (appearing in Doc. 84 and under provisional seal in Doc. 87).

(Doc. 86.)  The parties are thus in agreement with one another and have asked the court to seal portions of deposition transcripts and declarations related to the proprietary business operations or relationships and confidential business documents of the parties in this case, as well as any references in the briefing to that information.

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978).  "The operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), "and the public's business is best done in public," Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725,

---

[6] Salem protests the inclusion of any reference to the indemnification arrangement of a party in this case and asks specifically that it be struck or alternatively redacted.  (Doc. 78 at 2-5.)  Plaintiffs oppose any motion to strike the inclusion of those references.  (Doc. 83).  For the reasons stated, supra, striking is not proper because the document is not a pleading.  However, the court considers the request to redact the information, on which all parties agree.

23

727 (M.D.N.C. 2013). "When parties call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." Doe v. Pub. Citizen, 749 F.3d 246, 271 (4th Cir. 2014) (internal quotation marks omitted).

When a party makes a request to seal judicial records, a district court "must comply with certain substantive and procedural requirements." Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004). Procedurally, the court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. Id. "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because [o]nly then can it accurately weigh the competing interests at stake." Id. (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 181 (4th Cir. 1988)). "Generally, the public interest in disclosure heightens as the underlying motions are directed more to the merits and as the case proceeds toward trial." SmartSky Networks, LLC v. Wireless Sys. Sols., LLC, 630 F. Supp. 3d 718, 732 (M.D.N.C. 2022). Under this court's Local Rules, "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to

24

why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support." M.D.N.C. L.R. 5.4(c)(3).

Sealing confidential business information may be appropriate absent an improper purpose and countervailing interests. See Nixon, 435 U.S. at 598; Adjabeng v. GlaxoSmithKline, LLC, No. 1:12CV568, 2014 WL 459851, at *3 (M.D.N.C. Feb. 5, 2014). In order to determine whether confidential business information should be sealed, courts consider (1) "whether the party has shown that the information sought to be sealed is confidential"; (2) "whether disclosure would harm the party's competitive standing or otherwise harm its business interests"; (3) "whether the motion is narrowly tailored"; and (4) "whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information." Sims v. BB&T Corp., No. 1:15-CV-732, 2018 WL 3466945, at *2 (M.D.N.C. July 18, 2018). Furthermore, "personal information of third parties is often subject to protection, given the privacy interests at stake for individuals who are not part of the suit." Stevens v. Cabarrus Cnty. Bd. Ed., 1:20-CV-335, 2022 WL 4620906, at *15 (M.D.N.C. Sept. 30, 2022). However, it is not enough to assert generally that exhibits contain "sensitive and confidential business information" without supplying "specific underlying reasons for the district court to understand how [the party's interest] reasonably could be

25

affected by the release of such information." <u>Trs. of Purdue Univ.</u> <u>v. Wolfspeed, Inc.</u>, No. 1:21-CV-840, 2023 WL 2776193, at *2 (M.D.N.C. Feb. 28, 2023) (quoting <u>Wash. Post</u>, 386 F.3d at 579).

For the reasons set out below, the court will grant the parties' motions to seal except to the extent the court has found it necessary to discuss and thus reveal those facts in this memorandum opinion.

As to the first motion to seal, which pertains to portions of the deposition transcript of Jukka Vehmas and Salem's description of it (appearing in Docs. 58 & 59-3 (redacted) and Docs. 61 & 62-3 (sealed)), the parties argue that the portions they seek to seal contain limited confidential information regarding Glaston's proprietary business interests and strategies, specifically confidential and proprietary business information in the form of corporate strategies on intellectual property licensing to third parties and monetization of corporate intellectual property. (Doc. 64 at 3-4.) Sealing this information would be appropriate here, as courts will seal confidential business information where access to judicial records could provide a "source[] of business information that might harm a litigant's competitive standing," <u>SmartSky Networks, LLC v. Wireless Sys. Sols., LLC</u>, No. 20-cv-00834, 2022 WL 4933117, at *8 (M.D.N.C. Sept. 26, 2022) (quotation omitted), particularly licensing and marketing strategies, <u>Smithkline Beecham Corp. v. Abbott Labs.</u>, 1:15CV360, 2017 WL

26

11552659, at *5-*6 (M.D.N.C. Mar. 7, 2017). In addition, the redactions have previously been reviewed and narrowed by both parties (see Docs. 62, 65), and there are no less drastic alternatives available. The sealed information involves only two pages (pages 153-54) of the Vehmas deposition, and Salem only reveals fourteen lines of the quote of it (comprising four questions and responses) in its brief. Moreover, in reaching its decision, the court was able to consider the evidence but discuss it in general terms without undermining the core of the analysis. Therefore, sealing portions of the deposition transcript of Jukka Vehmas and Salem's description of it (appearing in Docs. 58 & 59-3 (redacted) and Docs. 61 & 62-3 (sealed)) is proper here, and the court will grant that motion.

As to the second motion to seal, which pertains to portions of two pages of the February 1, 2024 declaration of Sasu Koivumäki and descriptions of it (appearing in Docs. 70 & 70-2 (redacted) and Docs. 72 & 72-2 (sealed)), portions of the February 2, 2024 declaration of Henri Kaikkonen and descriptions of it (appearing in Docs. 70 & 70-3 (redacted) and Docs. 72 & 72-3 (sealed)), portions of the December 8, 2023 deposition transcript of Jukka Vehmas and descriptions of it (appearing in Docs. 70 & 70-4 (redacted) and Docs. 72 & 72-4 (sealed)), and a description of an indemnification arrangement of a party in this case (appearing in Doc. 70 (redacted) and Doc. 72 (sealed)), the balance of factors

27

is a bit different. As above, the parties correctly argue that these materials contain sensitive, confidential information that is integral to the competitive operations of the parties, including the details of a party's contractual relationship with one of its suppliers and additional proprietary business information in the form of corporate management, control, and strategy, particularly in relation to management of the patent portfolio. (Docs. 73, 78, 83.) Likewise, the parties have worked to narrow their redactions together, and no alternative less drastic remedy is available. However, in reaching its decision on the merits of the motion, the court determined it was necessary to rely on and disclose some of the information the parties sought to seal. In particular, information about Glaston's ownership relationship with Uniglass and the details of its arrangement regarding rights to the two patents at issue were indispensable to the court's finding that an implied exclusive licensing agreement may exist. Therefore, public interest in access to the information that the court relied upon is substantial, and it outweighs the interest of the parties in sealing that information. On balance, then, the court will deny the motion to seal to the extent that it conflicts with the disclosures made by the court herein and will otherwise grant the motion.

Commensurate with this ruling, the redacted briefs and exhibits at docket entries 70, 70-2, 70-3, and 70-4 and their

sealed counterparts at docket entries 72, 72-2, 72-3, and 72-4 must be modified so that the redactions are limited to that which the court has left undisturbed in its analysis and the information the court relied upon and revealed are made public. In Plaintiffs' response brief (Docs. 70 (redacted) & 72 (sealed)), the redactions should be limited so that the following passages are no longer redacted:

- The passage beginning with "and all decisions made with respect to . . ." and ending with ". . . separate from Glaston. Exh. 1 ¶ 5; Exh. 3 at 20-22." (Doc. 70 at 9-10; Doc. 72 at 9-10.)

- The passage beginning with "Glaston's patent manager manages . . ." and ending with ". . . litigation, at Glaston's control." (Doc. 70 at 10; Doc. 72 at 10.)

- The passage beginning with "to the extent any royalties . . ." and ending with ". . . made to Glaston. Exh. 1 ¶ 8." (Doc. 70 at 20; Doc. 72 at 20.)

- The passage beginning with "Glaston also has the exclusive right . . ." and ending with ". . . asserted patents. Exh. 1 ¶¶ 4, 7, 10; Exh. 2 ¶ 14." (Doc. 70 at 21; Doc. 72 at 21.)

29

- The passages beginning with "Uniglass cannot diminish . . ." and ending with ". . . assign its interests in the patent. Ex. 1 ¶ 10." (Doc. 70 at 22; Doc. 72 at 22.)

- The passage which states "the parent company controls all business of the subsidiary." (Doc. 70 at 24; Doc. 72 at 24.)

- The passage which states "at the control of Glaston." (Doc. 70 at 26; Doc. 72 at 26.)

- The passages beginning with "When asked 'who . . .'" and ending with ". . . 'Glaston.' Id. pp. 157-58." (Doc. 70 at 26-27; Doc. 72 at 26-27.)

- The passage which states "Uniglass has no documents." (Doc. 70 at 27; Doc. 72 at 27.)

- The passage beginning with "When asked 'who . . .'" and ending with ". . . 'Glaston.' Id. pp. 157-58." (Doc. 70 at 26-27; Doc. 72 at 26-27.)

- The passage beginning with "the only discovery provided . . ." and ending with ". . . no employees, documents or records." (Doc. 70 at 29; Doc. 72 at 29.)

In the declaration of Sasu Koivumki (Docs. 70-2 (redacted) & 72-2 (sealed)), the redactions should be limited so that they no

longer include the redactions proposed to paragraphs 5, 7, 8, 9, and 10. In the declaration of Henri Kaikkonen (Docs. 70-3 (redacted) & 72-3 (sealed)), the redactions to the document should be removed in their entirety. In the provided excerpts from the deposition transcript of Jukka Vehmas (Docs. 70-4 (redacted) & 72-4 (sealed)), the redactions should be limited so that they no longer include line 25 on page 157 and lines 1-2 on page 158 of the transcript. Once these modifications are made, the parties shall file the new copies of these documents on the docket.

Finally, as to the third motion to seal, which pertains to information describing the identity and contact information of the customers of Glaston Finland OY and Glaston America, Inc. (appearing in Doc. 84 (redacted) and Doc. 87 (sealed)), the proprietary interests of Glaston as to the identity of these customers whose information would otherwise be disclosed without their consent clearly predominate. Therefore, finding that this information has properly been identified as confidential, the court will grant the consent motion to seal this information.

## III. CONCLUSION

For the reasons stated herein,

IT IS ORDERED that the motion of Glaston and Uniglass to strike Salem's reply brief (Doc. 90) is DENIED but that Plaintiffs' alternative motion to file a surreply is GRANTED. Plaintiffs shall

31

file their proposed surreply (Doc. 90-1) as a separate docket entry forthwith.

IT IS FURTHER ORDERED that the parties' motions to seal (Docs. 60, 73, 86) are GRANTED IN PART and DENIED IN PART.  The parties shall forthwith file new redacted versions of the documents subject to the motion to seal consistent with this memorandum opinion and order.

IT IS FURTHER ORDERED that Salem's motion to dismiss Glaston for lack of constitutional standing pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.  (Doc. 57.)


                              /s/   Thomas D. Schroeder
                              United States District Judge

August 9, 2024